**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| ZACHARY-WAYNE WHITE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:23-cv-847-SDJ-KPJ |
| § | |
| FIFTH THIRD BANK, NATIONAL § | |
| ASSOCIATION, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the following motions:

- Plaintiff Zachary-Wayne White's ("Plaintiff") Request for Leave to File Amended Claim (the "First Motion for Leave to Amend") (Dkt. 22); and

- Plaintiff's Motion Seeking Leave to File Fourth Amended Complaint (the "Second Motion for Leave to Amend") (Dkt. 29), to which Defendants Fifth Third Bank, National Association ("Fifth Third"), Fannie Mae as Trustee for Securitized Trust FNMA 2020-009 Trust ("Fannie Mae"), AVT Title Services LLC ("AVT Title Services"), and Mackie Wolf Zientz & Mann P.C.'s ("Mackie Wolf") (collectively, the "Original Defendants") filed a response (Dkt. 33), and Plaintiff filed a reply (Dkt. 35).

For the reasons that follow, the Second Motion for Leave to Amend (Dkt. 29) is **GRANTED IN PART** and **DENIED IN PART**, and the First Motion for Leave to Amend (Dkt. 22) is **DENIED AS MOOT**.

## I. BACKGROUND

On September 5, 2023, Plaintiff, proceeding *pro se*, initiated this lawsuit by filing a petition (the "Petition") (Dkt. 1-2) in the 481st District Court, Denton County, Texas, against the Original Defendants. *See* Dkts. 1 at 1; 1-2 at 3. In the Petition (Dkt. 1-2), Plaintiff alleges that he is the "rightful owner" of real property located at 201 North Garza Road, Shady Shores, Texas 76208 (the "Property"). Dkt. 1-2 at 5. On December 23, 2019, Plaintiff and his wife, Alaina Michelle

1

White ("Ms. White"), acquired the Property with a loan of $408,500 from Great Western Financial Services, Inc. ("Great Western"). *See* Dkt. 29-4 at 1. That loan was secured by a promissory note (the "Note") and a deed of trust (the "Deed of Trust") (collectively, the "Loan Agreement"). *See* Dkts. 29-4; 29-5. Great Western purportedly transferred the Note and Deed of Trust to Fannie Mae, who appointed Fifth Third to serve as the servicer of the Loan Agreement. *See* Dkt. 1-2 at 4–5.

Plaintiff admits that he defaulted on his payment obligations under the Loan Agreement at some point thereafter. *See id.* at 23 ("We conditionally accept your claim that we have past due payments upon proof of claim that you are entitled to receive the payments."); *see also* Dkt. 29-1 at 10 ("By Tendering Payment, Plaintiff has admitted to there being a debt owed to Fifth Third Bank."). As a result of this default, Fifth Third demanded payment. *See* Dkt. 1-2 at 19 ("You have demanded payment for the aforementioned loan . . . ."). Before tendering any such payment, Plaintiff sent a letter to Fifth Third insisting that he be permitted to "**visually inspect**" the "**ORIGINAL, wet-ink signature Tangible Promissory Note**" at a mutually-convenient time and location" to ensure the Note's "authenticity and verify handwriting in the event that it has been altered, forged, reproduced, or 'copy-pasted.'" *Id.* at 20 (emphasis in original). Without this inspection, Plaintiff asserted that Fifth Third would be in violation of the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA"), and the Fair Debt Collection Practices Act ("FDCPA"). *Id.* at 6.

In response to this demand, Plaintiff alleges that Fifth Third submitted "copies" of some unspecified documents, which he claims are insufficient to indicate that the Loan Agreement was ever assigned to Fannie Mae. *See id.* at 6, 22–24, 34–35. Furthermore, based on Fifth Third's failure to adequately comply with Plaintiff's request, Plaintiff purportedly "rescinded" the Note

2

pursuant to TILA and its accompanying regulations. *See id.* at 6, 34–36. Thereafter, Plaintiff alleges that he tendered payment "for the entire payoff amount of $506,357.64 in the form of a Silver Surety Bond." *Id.* at 6; *see id.* at 59 (silver surety bond); *see also id.* at 67 (payoff amount totaling $506,357.64).[1] From this point forward, Plaintiff considered the issue closed, and the debt "discharged." *Id.* at 79. According to Plaintiff, if Fifth Third continued its collection efforts, he would charge them a "harassment fee of $10,000 per occurrence." *Id.* Based on the foregoing allegations, Plaintiff asserted the following "claims" against the Original Defendants: (1) temporary restraining order; (2) temporary injunction; (3) permanent injunction; (4) suit to quiet title; and (4) declaratory relief. *Id.* at 7–8. In addition, Plaintiff sought monetary damages exceeding $100,000.00 but no more than $2,000,000.00. *Id.* at 9.

On September 22, 2023, the Original Defendants removed this action to federal court on the basis of diversity and federal question jurisdiction. *See* Dkt. 1 at 2. According to the Original Defendants, there is complete diversity between the "properly named" parties. *Id.* Specifically, the Original Defendants assert that Plaintiff is a citizen of Texas, while Fifth Third and Fannie Mae are citizens of Ohio and the District of Columbia, respectively. *Id.* at 2–3. The Original Defendants further assert that AVT Title Services and Mackie Wolf are "improperly joined" and, thus, the Court should disregard their citizenship for the purposes of diversity jurisdiction. *See id.* at 3–6.[2] The Original Defendants also assert that the amount in controversy is satisfied because the fair market value of the Property is $577,743.00—far exceeding the statutory minimum for diversity jurisdiction. *Id.* at 8. Finally, the Original Defendants assert that because Plaintiff alleges that they

---

[1] The Court notes that this payoff method was clearly insufficient to meet Plaintiff's obligations under the Note. *See* Dkt. 29-4 at 1 ("I will make all payments under this Note in the form of cash, check[,] or money order.").

[2] The Original Defendants do not allege the citizenship of either AVT Title Services or Mackie Wolf. *See id.*

3

violated RESPA, TILA, and FDCPA, the Court has federal question jurisdiction "over this action," and supplemental jurisdiction over Plaintiff's state law claims. *Id.* at 9.

On September 29, 2023, Fifth Third and Fannie Mae filed a motion to dismiss (the "First Motion to Dismiss") (Dkt. 4). *See* Dkt. 4. That same day, AVT Title Services and Mackie Wolf filed a motion to dismiss (the "Second Motion to Dismiss") (Dkt. 5). *See* Dkt. 5. On October 3, 2023, Plaintiff filed a motion to remand (the "Motion to Remand") (Dkt. 6), wherein he attaches an amended petition (the "Amended Petition") (Dkt. 6-1), filed in state court post-removal,[3] which purportedly substantiates his allegations against AVT Title Services and Mackie Wolf. *See* Dkt. 6 at 2. Thus, Plaintiff contends that all parties are properly joined in this action. *See id.* The Amended Petition (Dkt. 6-1) also adds a new, non-diverse party—Great Western, the original mortgagee. *Id.* at 3; *see* Dkt. 6-1 at 2. For this reason, Plaintiff contends that, even if the citizenship of AVT Title Services and Mackie Wolf was ignored for the purposes of diversity of citizenship, "there is still not perfect diversity" between the parties. *See* Dkt. 6 at 3.

On October 12, 2023, Plaintiff filed a response to the First Motion to Dismiss (Dkt. 4) and the Second Motion to Dismiss (Dkt. 5). *See* Dkt. 9. That same day, Plaintiff filed an amended petition (the "Second Amended Petition") (Dkt. 10) as a matter of course. *See* Dkt. 10; *see also* FED. R. CIV. P. 15(a)(1)(B). In the Second Amended Petition (Dkt. 10), Plaintiff added Great Western and Mortgage Electronic Registration System ("MERS") (collectively, the "New Defendants"),[4] and asserts several claims against them, as well as the Original Defendants

---

[3] The Court notes that, upon removal, the state court is immediately divested of jurisdiction. *See* 28 U.S.C. § 1446(d). Thus, any post-removal amendment filed in state court is a "legal nullity." *Tharpe v. Affinion Benefits Grp., LLC*, No. 18-22, 2018 WL 3352940, at *4 (S.D. Tex. May. 22, 2018) (citing *Mauer v. Wal-Mart Stores, Inc.*, No. 16-cv-2085, 2016 WL 5815892, at *7 (N.D. Tex. Oct. 5, 2016)), *R. & R. adopted*, 2018 WL 3348885 (S.D. Tex. July 9, 2018).

[4] Plaintiff incorrectly and inconsistently refers to MERS in his filings. Dkt. 10 at 1, 3 ("Mortgage Electronic Registration System"; "Mortgage Electronic Registration Services, Inc."; "Mortgage Electronic Registration Systems, Inc.").

(collectively, "Defendants"). *See* Dkt. 10. Specifically, Plaintiff asserts the following claims against all Defendants: (1) wrongful foreclosure; (2) statutory fraud; and (3) slander of title. *See id.* at 8–10, 13–16. In addition, Plaintiff asserts a conflict-of-interest claim against AVT Title Services and Mackie Wolf, a conversion claim against Fifth Third, and a "suit for accounting" claim against Fifth Third, Fannie Mae, Great Western, and MERS. *See id.* at 10–13, 16–17.

On October 17, 2023, the Original Defendants filed a response to the Motion to Remand (Dkt. 6). *See* Dkt. 13. On October 26, 2023, the Original Defendants filed a motion to strike (the "Motion to Strike") (Dkt. 17). *See* Dkt. 17. According to the Original Defendants, where "an amendment would deprive a federal court of subject matter jurisdiction," the party may not file that amendment as a matter of course and, instead, must first obtain leave of court. *See id.* at 3–4. That same day, Plaintiff filed a reply in support of the Motion to Remand (Dkt. 6), wherein he indicated that he made "a procedural misstep" by not first "requesting leave" to file the Second Amended Petition (Dkt. 10). Dkt. 18 at 3. In addition, Plaintiff represents that he "would like to withdraw his motion to remand." *Id.* at 6. Also on October 26, 2023, AVT Title Services and Mackie Wolf filed another motion to dismiss (the "Third Motion to Dismiss") (Dkt. 20). *See* Dkt. 20.

On November 9, 2023, Plaintiff filed the First Motion for Leave to Amend (Dkt. 22), wherein Plaintiff represents that he would like a "quick resolution" to this case and, thus, requests leave to file an amended pleading which removes "parties and causes of action." Dkt. 22 at 1–2. Indeed, Plaintiff attached his proposed amended pleading (the "Third Amended Petition") (Dkt. 22-1), which omitted the New Defendants and asserts the following claims against the Original Defendants: (1) wrongful foreclosure; (2) statutory fraud; and (3) slander of title. *See* Dkt. 22-1 at 7–10, 14–18. In addition, Plaintiff asserts a claim of "assisting and participating in

5

wrongful foreclosure" against AVT Title Services and Mackie Wolf, and a claim of conversion against Fifth Third. *See id.* at 10–14.

On May 20, 2024, prior to the Court ruling on the First Motion for Leave to Amend (Dkt. 22), Plaintiff filed the Second Motion for Leave to Amend (Dkt. 29), wherein he requests leave to file another amended pleading. *See* Dkt. 29. Plaintiff attached the proposed pleading (the "Fourth Amended Petition") (Dkt. 29-1), which asserts a breach of contract claim or, in the alternative, claims of negligence and gross negligence against Fifth Third and Fannie Mae. Dkt. 29-1 at 9–21. Plaintiff further asserts a legal malpractice claim against AVT Title Services and Mackie Wolf, a conversion claim against Fifth Third, and a slander of title claim against the Original Defendants. *See id.* at 21–28. On June 3, 2024, the Original Defendants filed a response to the Second Motion for Leave to Amend (Dkt. 29). *See* Dkt. 33. On June 12, 2024, Plaintiff filed a reply. *See* Dkt. 35.

## II.     LEGAL STANDARDS

### A.     Leave to Amend

Under Rule 15 of the Federal Rules of Civil Procedure, a "party may amend its pleading once as a matter of course." FED. R. CIV. P. 15(a)(1). However, "if the pleading is one to which a responsive pleading is required," the amendment must be made no later than "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1)(B). "When this time period expires or the party already has amended the pleading, this provision no longer applies and an amendment falls under Rule 15(a)(2), which requires leave of court or the written consent of the opposing party." 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1480 (3d ed. 2023). But "[t]he court should freely give leave when justice so requires." FED. R. CIV.

6

P. 15(a)(2). As such, leave to amend may only be denied for good cause, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**B.      Futility of Amendment**

"An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)). Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "In evaluating motions to dismiss filed under Rule 12(b)(6), the court 'must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th. Cir. 1986)). "Further, '[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor.'" *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). However, courts are "not bound to accept as true 'a legal conclusion couched as a factual allegation.'" *In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"The well-pleaded facts must permit the court 'to infer more than the mere possibility of misconduct.'" *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint "must allege enough facts to move the claim 'across the line from conceivable to plausible.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), *as revised* (Dec. 16, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

7

"Determining whether the plausibility standard has been met is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 663–64).

At the motion to dismiss stage, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### III.     ANALYSIS

**A.     Second Motion for Leave to Amend**

In the Second Motion for Leave to Amend (Dkt. 29), Plaintiff seeks leave to file another amended pleading asserting new causes of action. *See* Dkt. 29 at 2. Specifically, Plaintiff asserts a breach of contract claim or, in the alternative, a negligence claim, against Fifth Third and Fannie Mae. *See* Dkt. 29-1 at 9–21. Plaintiff further asserts a legal malpractice claim against AVT Title Services and Mackie Wolf, a conversion claim against Fifth Third, and a slander of title claim against the Original Defendants. *See id.* at 21–28. In their response, the Original Defendants argue that additional leave to amend should be denied because: (1) Plaintiff unduly delayed seeking leave to amend; (2) the Original Defendants will suffer undue prejudice if leave to amend is granted; and (3) the proposed amendment would be futile. *See* Dkt. 33. The Court addresses each in turn below.

   **1.     Undue Delay**

The Original Defendants argue that leave to amend should be denied because Plaintiff filed the Second Motion for Leave to Amend (Dkt. 29) more than eight months after initiating this

lawsuit. *See* Dkt. 33 at 4. According to the Original Defendants, because Plaintiff offers no explanation for this delay, leave to amend should be denied. *See id.* at 4–5. In his reply, Plaintiff argues that the Original Defendants' dispositive motions have identified infirmities in his allegations, and that, in response, he proactively sought leave to amend. Dkt. 35 at 4. In addition, Plaintiff points out that this case is still in its procedural infancy, as discovery has not yet begun. *See id.* The Court agrees with Plaintiff.

"Although Rule 15(a) does not impose a time limit for permissive amendment, at some point, time delay on the part of a plaintiff can be procedurally fatal." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (cleaned up) (quoting *Whitaker v. City of Houston*, 963 F.3d 831, 836 (5th Cir. 1992)). However, "delay alone is an insufficient basis for denial of leave to amend"; instead, any delay must be "undue," meaning that it prejudices the nonmoving party or imposes "unwarranted burdens on the court." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) (collecting cases). "Delay is undue and prejudicial if it hinders the opposing party's ability to respond to the proposed amendment or to prepare for trial." *Dueling v. Devon Energy Corp.*, 623 F. App'x 127, 130 (5th Cir. 2015). When leave to amend is sought prior to the issuance of a scheduling order, the amendment is presumptively timely. *See, e.g.*, *Kleppinger v. Tex. Dep't of Transp.*, No. 10-124, 2011 WL 13135049, at *2 (S.D. Tex. June 24, 2011) ("When a party files a motion for leave to amend by the court-ordered deadline, there is a 'presumption of timeliness.' Notably, the deadline to amend pleadings has not been set in this case because a scheduling order has not been issued." (internal citation omitted)); *Norman v. Webster*, No. 24-240, 2024 WL 3457600, at *2 (E.D. La. July 17, 2024) ("Trial has not been scheduled and there is no Scheduling Order in place yet. There is no basis for finding 'undue delay' on [the] [p]laintiffs' part.").

9

In the present case, there has been no undue delay. Plaintiff, proceeding *pro se*, filed the Second Motion for Leave to Amend (Dkt. 29) before the issuance of a scheduling order, prior to any discovery, and before the Court has addressed the sufficiency of his allegations. While several months elapsed between the filing of the Petition (Dkt. 1-2) and the Second Motion for Leave to Amend (Dkt. 29), this case remains in its procedural infancy due to the large number of pending dispositive and non-dispositive motions. Furthermore, given the early stage of these proceedings, it is unclear how any purported delay would hinder the Original Defendants' "ability to respond to the proposed amendment or to prepare for trial." *Dueling*, 623 F. App'x at 130. For all of these reasons, the Court will not deny leave to amend on the grounds of undue delay.

### 2. Undue Prejudice

The Original Defendants argue that permitting leave to amend will cause "undue prejudice and additional work" by rendering a number of motions and other filings moot. *See* Dkt. 33 at 5. In his reply, Plaintiff argues that additional work does not amount to undue prejudice. *See* Dkt. 35 at 4–5. The Court agrees with Plaintiff. While several motions will be rendered moot by providing Plaintiff leave to amend, undoubtedly frustrating the Original Defendants and resulting in *some* prejudice, that reason alone is insufficient to demonstrate ***undue*** prejudice. *See, e.g.*, *Texas v. I.R.S.*, No. 23-cv-406, 2024 WL 951202, at *1 (W.D. Tex. Mar. 5, 2024) (finding that having to refile a motion to dismiss is not a sufficient ground to deny leave to amend because, if that was "enough to constitute *undue* prejudice, no court would ever be able to grant leave to amend" (emphasis in original)); *Jackson v. St. Charles Par. Hous. Auth. Bd. of Comm'rs*, No. 18-7917, 2019 WL 13274910, at *3 (E.D. La. Sept. 30, 2019) (granting leave to amend where the case had been pending for over a year and no scheduling order had been issued even though the plaintiff filed multiple amendments resulting in multiple motions to dismiss, delays in the case, and

additional expenses). For this reason, the Court finds no undue prejudice at this early juncture and, thus, will not deny leave to amend on this basis.

### 3. Futility

The Original Defendants argue that additional amendment would be futile; that is, some of the claims added by Plaintiff fail to state a claim upon which relief could be granted. *See* Dkt. 33 at 5. Specifically, the Original Defendants challenge the sufficiency of Plaintiff's factual allegations supporting his claims of negligence and gross negligence, breach of contract, and slander of title. *See id.* at 6–7. The Court considers each of these claims below.

#### a. Breach of Contract

In the Fourth Amended Petition (Dkt. 29-1), Plaintiff asserts a breach of contract claim against Fifth Third and Fannie Mae. *See* Dkt. 29-1 at 9–13. The allegations in support thereof are difficult to decipher. Indeed, Plaintiff asserts that he "cannot prove a valid and enforceable contract between himself and the Defendants"—directly contradicting an element of his claim. *See* Dkt. 29-1 at 10. Upon careful consideration, it appears that Plaintiff has alleged the wrong claim by mistake. Rather than trying to enforce the terms of the Loan Agreement, Plaintiff challenges the validity (or existence) of the assignment of the Loan Agreement to Fannie Mae. *See, e.g.*, *id.* at 10, 20. This is not a breach of a contract claim; rather, it is a wrongful foreclosure claim. *See, e.g.*, *Miller v. Homecomings Fin., LLC*, 881 F. Supp. 2d 825, 829 & n.7 (S.D. Tex. 2012). Therefore, while Plaintiff's proposed pleading fails to state a breach of contract claim and, thus, permitting amendment of such claim would be futile, to the extent Plaintiff wishes to assert a wrongful foreclosure claim, the Court grants leave for him to do so.[5]

---

[5] The Original Defendants attack the nominal claim (that is, breach of contract) while ignoring the substance of Plaintiff's allegations. *See* Dkt. 33 at 7. In the Fifth Circuit, "a party need not include the proper label for a claim in their complaint"; indeed, the nominal characterization of the claim is wholly immaterial so long as the factual

In his breach of contract discussion, Plaintiff also asserts that there is an implied-in-law contract, or quasi-contract, between the parties. *See* Dkt. 29-1 at 10–11. The Original Defendants make no argument regarding the futility of this particular claim, *see* Dkt. 33 at 7, and the Court declines to make arguments on their behalf, particularly given the liberal policy favoring amendment. Thus, if Plaintiff intends to raise a separate quasi-contract claim, he is free to do so in an amended pleading.

However, the Court notes that a quasi-contract "is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (citation omitted) (internal quotation marks omitted). For this reason, to the extent there is—in fact—a "valid, express contract" covering "the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Id.* (citing *TransAmerican Nat. Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App.—San Antonio 1996, writ denied)). As mentioned above, *see supra* note 5, neither Plaintiff nor the Original Defendants have provided the writing purportedly transferring the Note to Fannie Mae; further, no such document was filed in the real property records. Accordingly, the Court withholds making any finding on this issue until it is presented with the written instrument.

---

allegations are sufficient to provide "fair notice" of the "grounds upon which [the claim] rests." *See Barron v. United States*, — F.4th — (5th Cir. 2024) (citations omitted). Plaintiff clearly intends to challenge the existence or validity of any transfer of the Note. *See* Dkt. 29-1 at 10 ("Plaintiff cannot prove a valid and enforceable contract between himself and the [Original] Defendants."); *id.* at 20 ("Plaintiff avers that the photocopy of the [N]ote furnished by Fifth Third . . . as proof of claim shows no evidence that it was sold to Fannie Mae."). If Plaintiff's allegations are insufficient to state a claim of wrongful foreclosure, the Original Defendants are free to raise those arguments in a dispositive motion, if any. Specifically, the Original Defendants could present the purported assignment of the Loan Agreement, which Plaintiff repeatedly mentions in his pleadings and exhibits. To date, the Original Defendants have failed to do so. The Court notes that no such assignment was ever filed in the real property records and, as such, the Court cannot take judicial notice of its existence.

### b. Negligence & Gross Negligence

In the Fourth Amended Petition (Dkt. 29-1), Plaintiff asserts claims of negligence and gross negligence in the alternative to his breach of contract claim. *See* Dkt. 29-1 at 13. According to Plaintiff, Fifth Third, as the purported loan servicer, had a duty to validate that the debt was transferred to a new party. *See id.* at 14. Plaintiff asserts that Fifth Third did not do so. *See id.* at 15. Specifically, Plaintiff asserts that Fifth Third presented a blank note and, thus, failed to validate whether it had a right to collect payments thereunder. *Id.*[6] Likewise, Plaintiff argues that, after he tendered payment to Fifth Third via the silver surety bond, Fifth Third had the duty to pay off the loan, discharge the debt, and release the lien from the Property. *Id.* at 16–17. Once again, Plaintiff asserts that Fifth Third failed to satisfy its duty. *Id.* at 17. Plaintiff also appears to argue that all of the Original Defendants may be held liable in tort due to their participation in the foreclosure of the Property. *See id.* at 21. In response, the Original Defendants assert that "Plaintiff's tort-based claims for negligence and gross negligence are barred by the economic loss doctrine because the sole potential basis for liability is contractual in nature by the terms of the Note and Deed of Trust." Dkt. 33 at 6.

"Under Texas law, the economic loss rule 'generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract.'" *TIB—The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 670 (N.D. Tex. 2014) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)). However, as repeatedly emphasized above, it is unclear which of the Original Defendants, if any, is the assignee

---

[6] The Court notes that, rather than being an ineffective assignment, the Note could have been validly indorsed in blank. *See* TEX. BUS. & COM. CODE ANN. § 3.205(a). In that circumstance, the "instrument becomes payable to [the] bearer and may be negotiated by transfer of possession alone until specially indorsed." *Id.* § 3.205(b). But neither Plaintiff nor the Original Defendants have submitted the instrument itself. For this reason, the Court withholds any finding regarding its validity.

13

of the Note and Deed of Trust. This issue controls the applicability, or lack thereof, of the economic loss doctrine. *See Thompson v. Bank of Am., N.A.*, 13 F. Supp. 3d 636, 653 (N.D. Tex. 2014). Because the Court is bound to resolve questions of fact in Plaintiff's favor at this time, denying leave to add this claim would be inappropriate. *Inclusive Cmtys. Project, Inc.*, 920 F.3d at 899 (quoting *Lewis*, 252 F.3d at 357).

Plaintiff's allegations obviously suffer from other serious infirmities. For example, Plaintiff attempts to substantiate the "duty" element of his negligence claims by reference to RESPA, among sources of statutory and common law. *See* Dkt. 29-1 at 14. Specifically, Plaintiff asserts that, upon receiving a qualified written request, Fifth Third had a duty to validate its ownership of the debt. *See id.* But the statutory provision cited by Plaintiff governs requests related to the servicing of the loan and, in fact, excludes requests to determine whether the defendant is the rightful owner of the debt, as well as requests to visually inspect the original, wet-ink promissory note. *Haller v. Wells Fargo Bank, N.A.*, No. 17-cv-606, 2018 WL 6735094, at *5–6 (E.D. Tex. Oct. 15, 2018). Likewise, Plaintiff asserts that Fifth Third had a duty to discharge the debt once it received his silver surety bond. *See* Dkt. 29-1 at 16–17. But assuming that Fifth Third and Fannie Mae are the appropriate servicer and assignee of the Loan Agreement, as Plaintiff necessarily does in making this argument, the debt could not be discharged by tendering a silver surety bond. *See* Dkt. 29-4 at 1 ("I will make all payments under this Note in the form of cash, check[,] or money order."). Notwithstanding these issues, as explained above, the Court will not deny leave to amend on grounds not raised by the Original Defendants. Thus, Plaintiff is permitted to add claims of negligence, if any, in his amended pleading.

      **c.**      **Slander of Title**

The Original Defendants argue that Plaintiff has not, and cannot, allege the elements of slander of title. *See* Dkt. 33 at 6–7. In his reply, Plaintiff concedes as much. Indeed, Plaintiff acknowledges that, "after further research[,] he agrees that the slander of title claim fails only for lack of a specific sale." Dkt. 35 at 7. The Court agrees with parties. "The elements of slander of title are (1) the uttering and publishing of disparaging words, (2) falsity, (3) malice, (4) special damages, (5) possession of an estate or interest in the property disparaged, and (6) the loss of a specific sale." *McLaughlin v. Wells Fargo Bank, N.A.*, No. 12-cv-2658, 2013 WL 5231486, at *3 (S.D. Tex. Sept. 13, 2013) (citations omitted). The "loss of a specific sale" is an essential element of a slander of title claim and, without it, a plaintiff is barred from recovering. *See U.S. Enercorp, Ltd. v. SDC Mont. Bakken Expl., LLC*, 966 F. Supp. 2d 690, 699 (W.D. Tex. 2013) (collecting cases). Because Plaintiff has not alleged this element of his claim and affirmatively concedes its absence, the addition of this claim would be futile. On this basis, the Court denies leave to amend with respect to Plaintiff's proposed slander of title claim.

**B.**    **First Motion for Leave to Amend**

Prior to filing the Second Motion for Leave to Amend (Dkt. 29), Plaintiff filed the First Motion for Leave to Amend (Dkt. 22), wherein Plaintiff sought leave to narrow down the claims and parties in this litigation. *See* Dkt. 22; *see also* Dkt. 22-1. Because Plaintiff's second request is granted in part, and because amendment of a pleading "supersedes the original complaint and renders it of no legal effect," *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citation omitted), Plaintiff's first request is now moot, and is denied as such.

### C. Additional Amendments

Finally, the Court notes that Plaintiff filed a number of amended pleadings during the course of this litigation. *See* Dkts. 1-2 (Petition); Dkt. 6-1 (Amended Petition); Dkt. 10 (Second Amended Petition); Dkt. 22-1 (Third Amended Petition); Dkt. 29-1 (Fourth Amended Petition). While leave to amend "should be freely given when justice so requires," it "is in no way automatic." *Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 288 (5th Cir. 2023) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)). Furthermore, "at some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)) (internal quotation marks omitted). As explained above, Plaintiff has had a number of opportunities to amend his allegations. As the Court has now considered Plaintiff's allegations and provides an additional opportunity to amend such allegations, the Court will not permit additional amendments before considering any pre-answer motion to dismiss asserted by the Original Defendants.

### IV. CONCLUSION

For the foregoing reasons, the Second Motion for Leave to Amend (Dkt. 29) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Second Motion for Leave Amend (Dkt. 29) is **GRANTED** with respect to Plaintiff's quasi-contract, wrongful foreclosure, negligence, and gross negligence claims, and **DENIED** with respect to Plaintiff's breach of contract and slander of title claims.

**IT IS FURTHER ORDERED** that the First Motion for Leave to Amend (Dkt. 22) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff shall file an amended pleading consistent with this Order no later than fourteen (14) days after receipt of this Order. The Original Defendants shall file an answer or pre-answer motion to dismiss no later than fourteen (14) days thereafter.

**So ORDERED and SIGNED this 23rd day of August, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE